and for the appellant, Mr. McCarthy, for the appellee, Mr. McNeil. Mr. McCarthy, you may proceed. Thank you, Your Honor. Your Honor, may it please the Court, my name is John McCarthy, and I represent the defendant, Dwayne Sykes, in this matter. The State's theory in this case can be condensed down into four words. In Thuny, we trust. They relied exclusively on Thuny's testimony to establish a corpus delicti defense, the fact that there was $100 missing. And they relied on Thuny's inadmissible evidence of his narration of the videotape to prove that my client stole the money. First, there's no confident evidence that the money was missing. The first thing, in order to know if you're down $100 in the cash register, you have to know how much money you started with. Mr. Thuny was asked how much money was placed in his drawer at the beginning of the day. The only testimony he could give was, it's store policy that we start with $200. Well, that doesn't mean they started with $200. What was going on here is that Mr. Thuny had set up a sting operation to catch an employee they thought might be stealing money. If I was going to set up a sting operation, I would count out the money at the beginning of the day, so when I went to testify, I'd be able to say, there's $200 in that drawer, and I counted it. Or the State would be required to bring the person in who actually counted the money. The second problem with the State's case is they relied on Thuny's testimony to let the jury know that $100 was actually missing. However, Thuny had no personal knowledge that there was $100 missing. He just was made aware of that fact. So we don't even know if there's any money missing. It could have been shorter at the beginning of the day, or it could have been any number of factors that happened. Now, even if this Court were to accept Mr. Thuny's testimony on corpus telecti, they still have to prove that Duane Sykes was the individual who stole the money. And this is where the State's case really just goes awry. Mr. Thuny had, first of all, five or six different employees other than my client had access to that cash register. Any one of them could have taken money from the cash register, but none of them were investigated. Mr. Thuny said that's because they didn't do anything suspicious. Well, this camera was 20 feet off to the left, pointing down to the cash register, and you couldn't see the individual transactions take place. If you're a retailer and somebody comes in and buys $20 worth of goods, and they're your friend, and you give them $100 worth of change, that doesn't look suspicious, and there's no way that video is going to pick that up. In most of the operations in retail stores that I've seen, they set the camera up so you can see the transaction take place and you can match the tape with the transaction. The second problem is the State presented a videotape. Now traditionally, in order to introduce a videotape, it was called pictorial testimony. You had to have somebody who was present at the time the tape was made to testify towards its accuracy and veracity. And in reality, that person isn't really narrating the videotape. They're just telling the jurors what happened, what they observed while they were there. The videotape is just demonstrative evidence of that. Along about the 70s, I think in the federal courts, they recognized that this was a problem because of advances in technology. All of a sudden, we now have 24-hour surveillance. We have ATN cams that watch people take money in and out, and nobody is going to be sitting there 24 hours a day watching these events as they occur. However, these tapes were great evidence, and as long as they were proven to be accurate, it really assisted the jury in the truth-finding function. So with the silent witness theory, what they've decided is, we'll let the tape in, but the tape has to speak for itself. And that's not what happened in this case. And the problem is, unlike some videos, where everything would be crystal clear and the jury can see it for itself, and you could perhaps say the narration of the video is harmless error, that's not the case here. The case here, the original was on a VHS tape, and it was transferred to a DVD. Now normally you would think, you know, DVD, digital technology, it's going to be a lot clearer, the jury is going to be able to see everything. But in reality, this is a horrible copy. There's electronic interference all through it, and as the prosecutor said in her closing argument, you can't see what's in his hand. But the prosecutor backed that up the same way Mr. Thune did. And Mr. Thune told the jury that he saw Dwayne Sykes take a dollar bill out of the cash register, and he was relying more on the original clear VHS tape than he was on the DVD that was presented. Now the problem with this is Mr. Thune's opinion as to what happened at that tape invaded the province of the jury. When that jury went back to, if it had been properly admitted, and the DVD spoke for itself, the jury could go back to the jury room, I could say, you know what, I didn't see anything. Another juror could say, you know, I think I thought I saw something. And we could debate that as a jury amongst ourselves and reach a verdict. The problem in this case is twofold. The juror who claims he saw what was on the video can say, ah, but Mr. Thune, he has no reason to lie, and he told us what he saw. The second effect it has, even if that's not brought up, I as a juror who says, I don't think I saw anything, have in the back of my mind, I don't want that Mr. Thune. Seems like an honest guy. He says he saw it. I'll just go ahead and go along with everybody else. And we know that is a distinct possibility of what happened here based on the prosecutor's rebuttal argument. During the defense counsel's argument, defense counsel attempted to persuade the jury that the only real evidence in this case is the DVD. And the prosecutor kicked that up and said, now the law, as defense counsel tells you, is that the only evidence you've seen is this video. The judge is going to tell you the real law. The real law is the evidence that you should consider consists of the testimony of the witness and the exhibit, the video. Somebody's sitting up here promising to tell the truth and telling you that's evidence. Whether it's on the video or not, that's evidence. It counts the same way as the video. So the jury's going back there with that belief. So the question becomes, can this possibly be harmless error in this case? I've already established, I believe, when I spoke a little bit about reasonable doubt, that no, this is closely balanced at best for the state, and even if this court were to find it wasn't closely balanced, where the video is the only evidence that supports the state's theory, my client took the money, and Mr. Thuney's testimony corrupted that evidence, there's no way this court can consider Mr. Thuney received a fair trial under the second problem of the plain error analysis. I also addressed this in regards to ineffective assistance to counsel. I don't think there's any strategic reason you let that testimony in. I don't think the attorney understood the limits of the silent witness theory, that the tape speaks for itself, or the limits of video testimony. So it really can't be a strategic decision, and my client was definitely prejudiced by that. If there's no questions? What did the trial court do, or what did he say was expected to the post-trial motion? The post-trial motion was filed 57 days after the date of conviction. But within, it was, so it was late. It's supposed to be filed within 30 days. And the trial court certainly had the discretion to refuse to consider it. However, under the Harper case, the trial court still had jurisdiction over the case because of sentencing. And because of that, he had discretion to hear the post-trial motion, but based on its language, it operated under the assumption it had no discretion. And therefore, that's the only bone of contention I had. If the trial court didn't think it had discretion, it should be sent back to let it exercise its discretion in that situation. And it could still deny it, deny hearing it, but it should realize, well, if I want to hear this post-trial motion, I can. Thank you. Thank you, Your Honor. Thank you, Counsel, Mr. McNeil. Thune's testimony concerning defendant's actions on the video were this. Quote, when the drawer opened with his left hand, defendant removed what looked like a bill from the far left side of the terminal, tucked it in his hand, closed the terminal, removed the no-sale receipt from the top of the terminal, and walked away, and his hand went into his left pocket. So Thune didn't affirmatively state that defendant took a bill from the register. He did, it was his opinion, and it was opinion testimony. It looked like a bill. And, of course, the DVD published to the jury couldn't clearly show that what defendant took was a bill. However, Thune testified to many other things disregarding defendant's actions in the video. Testified that he was an experienced loss prevention manager, been doing it for 14 years. Testified it was reported to him that the men's drawer was $100 short. Again, testified that the normal policy is that I think it was an easily reasonable inference for the jury to assume that there was $200 in the drawer at the start of the day. He reviewed that whole day's video at the men's register, and also the corresponding detail tape from that register along with the video. The only suspicious activity he testified was that the whole day was that of defendant in the video shown to the jury. Thune testified that the larger bills are kept in the left-hand side of the register, and Thune testified that what the process was at Bergener's when an employee does a no-sale transaction. And he went through that process. Mr. McNeil, didn't Mr. Thune basically say to the jury, well, the prosecutor even says to him, now this video is pretty grainy, it's hard to see it. And Thune says, oh, that's right, but I looked at the good video. The jury doesn't get to see that, but I saw it, and I'm going to tell you what was on that video. Is that proper? Well, he goes on, and it says, it was a clear picture of the question, and you indicated that when you watched the video you were able to see the defendant put a bill in his left hand. Were you able to clearly see that in this version of the DVD? Answer, you can see it. It's a little more difficult, but it is there. So I think it was a reasonable... But he's telling the jury what they're watching. Isn't it up to the jury to decide what they're watching? Yes, and the jury did watch the video directly after that, and not only did the jury see what the defendant did, I think the only real opinion that Thune had was that he removed something that looked like a bill. All the rest of it, the actions from the far left side of the terminal, cupped it in his hand and closed the terminal. Did you watch the videotape? Yes, I did. And I didn't watch it on a HD TV or anything like that. I watched it on a regular old TV down in the basement, and from what I saw, of course you can't make out what he took from the register, but you can make out that he took something from the left-hand side of the register. I don't know what the defendant is trying to assert, that the camera angles or that the distance was off. In my view, it was a direct overhead shot of the terminal and the register, and the defendant opening the register, quickly taking the no-sail receipt, reaching in. He didn't put his hand in his left pocket, and that's what I wanted to get to mainly. Thune testified, walked away with his hand in his left pocket. The video didn't show that. The camera angle, you couldn't tell where his left hand was. And with this, defense counsel accentuated multiple times in closing argument that Thune's account was inconsistent with what the video showed. So if anything, what Thune's recollection did more than anything was open the door to an attack on his credibility, or his recollection of the video itself. And defense counsel did take advantage of this. And again, of course, the defendant conceded that this issue was forfeited. He didn't include the issue in his post-trial motion, and didn't object when Thune was testifying to what the video reflects. So again, it has to rise to the level of plain error, which means either the defendant was prejudiced or the evidence was closely balanced. As I said, there was additional evidence in the form of Thune's testimony, not regarding the defendant's actions. And also there was additional evidence, circumstantial evidence in the video itself, in the defendant's actions before and during when he opened the register. The video showed him pacing around, looking around, checking to see if anybody was around, and then quickly opening the drawer, reaching his hand to the left-hand side, pulling it back, taking his own no-show receipt, which I think is the most suspicious part of it, because common sense dictates that there's no reason for an employee to ever take a receipt with himself. It either goes with the customer or stays in the register. Thune also testified that if the register needed change, one copy of the carbonless form would go to the cashier and one copy would stay in the register. And the only time that an employee should ever do a no-sale transaction is to check if the drawer needed change or if the drawer actually did change. Here, one suggestion that the defendant asserts is that he was checking to see if the drawer needed change. However, if you all watched the video, the drawer was open only for a few brief moments, pretty much only open enough for the defendant to reach into it and leave. So all of this is, the jury could easily reasonably infer that this was all suspicious behavior, both before and during the time the register was opened by the defendant. And along with Thune's testimony that wasn't a reflection of the defendant's actions in the video, it's clear that the outcome of the trial wouldn't have been different if Thune's recollection hadn't have been on record, especially considering that defense counsel took advantage of Thune's inconsistencies in the recollection to open an attack on his credibility. I don't know if you ever answered my question. Was it proper under the case law for Thune to narrate the video to tell the jury what they're actually seeing? No, he did not narrate the video as it was going on. He did say what the video reflected during his testimony. And under the silent witness theory, that is improper. However, in this case it doesn't rise to the level of plain error because the outcome of the trial wouldn't have been different absent that recollection. As for the post-trial motion issue, the trial court was correct in denying this. Section 161B provides a written motion for a new trial shall be filed by the defendant within 30 days following the entry of a finding or the return of a verdict. The word shall is well settled in section 161B indicates that this is a mandatory and not directory. If the court adopts the position defendant asserts, which is from the Fifth District case, People v. Harper, it would render the language within 30 days following the entry of a finding or return of a verdict superfluous since a court could always have jurisdiction to hear the motion until the defendant's sentence. So should we even mention Harper? I would think not, especially since they misinterpreted they relied on People v. Tulloch, the Second District case but disregarded the main factor why Tulloch even addressed the issue and that would be because the trial court and Tulloch contributed to the untimely mistake. They misrepresented to the defendant that he could file his post-trial motion on the same day as sentencing and then went ahead and denied his post-trial motion based on untimeliness. Their words were a cause of the untimeliness of Tulloch. Harper decided this didn't matter. Still saying that the court had the discretion to deny a post-trial motion based on untimeliness. How do you make a jurisdictional argument when the defendant hasn't even been sentenced by the trial court? How do you argue there's lack of jurisdiction? I would not argue there's lack of jurisdiction. I would say that the trial court would have the discretion the plain language of the statute says they have 30 days. It doesn't mention anything about the date the defendant sentenced at all. You just said the court has discretion to hear it or not to hear it. The court has discretion to hear it after 30 days. But here the court thought they didn't have discretion to hear it. Isn't that true? The court, correct, but the result is the same. You don't know because she didn't hear the post-trial motion because she thought she couldn't. But the court has discretion to dismiss it based on untimeliness after 30 days has passed. That's not what happened here. She didn't dismiss it, she just said, I can't hear it. And that's true. However, I don't think, as I said, the result was the same. The defendant files his post-trial motion after 30 days. Not under any misrepresentation from the trial court. The trial court denies the motion based on untimeliness whether it was because they perceived they didn't have jurisdiction or whether it was because they had the discretion. The result is the same. A perceived failure of jurisdiction after 30 days based on untimeliness is the same as denying it based on your own discretion of untimeliness. To assume that they have to say on the record that we still have jurisdiction but we're denying it because of untimeliness that contradicts the plain language of the statute which doesn't mention anything about sentencing the defendant's sentence or anything like that. Again, the Harper court failed to take into account the important factor to lock the court was a factor in the untimeliness by telling the defendant that he could file post-trial motions at the date of sentencing. So again here, if the trial court did hear the defendant's motion, even though it was after 30 days the defendant would have discretion but under no interpretation of section 161B was it an abuse of discretion or improper to deny the defendant's motion based on untimeliness. Are there any more questions? I don't believe so. Thank you. I just have two or three quick points on rebuttal. Part of the state's argument is that my client was acting suspicious before he went towards the cash register. That's the state's interpretation of that. Suspicion does not equal beyond a reasonable doubt. Without the narration of Mr. Thune he could also look like an employee who is very poor. The second point is he did not simply contrary to the state's argument my client did not open the door for a second take money out or whatever it was out and close the door. If you notice when you watch the video his finger goes all the way across from left to right as if he's checking to see if he needs to get change. And that's entirely consistent with what Mr. Thune said an employee can do in ringing up a no-sale transaction to check to see if they need change. He determined he didn't need change, he closed the door and walked away. And the last point is, this is really early in the day and if you believe Mr. Thune's testimony that they start the day with $200 in the register I think we could all agree that part of that $200 in the register is not going to be a $100 bill. That just would leave you too little change for the rest of the day. So the state should have presented evidence that somebody between 8 and 9 o'clock in the morning did a $100 transaction, but they didn't. And the other point I'd like to make I know of no retail establishment where you go in and you hand them a $100 bill that $100 bill goes directly in the cash register. They pick it up and they put it underneath. So then the only other explanation that you would have is that my guy is Houdini because he was able to go to the left side of the drawer grab five 20s as he's going along and he can't see what's in his hand. The state's evidence is just as insufficient to prove my client guilty beyond a reasonable doubt. Thune's narration of the video corrupted the entire trial and my client is asking that you reverse on reasonable doubt grounds and if not that, reverse because of the improper silent witness testimony. Thank you.